**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:25-cv-25019**

ESTATE OF RUSSELL JONES,

                    Plaintiff,

    v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

                    Defendants.

_____/

**COMPLAINT**

    Plaintiff Estate of Russell Jones (hereinafter, "ODB" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I.      JURISDICTION AND VENUE**

    1.      This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement and false designation of origin under the Lanham Act pursuant to 15 U.S.C. § 1051, *et seq*., including §§ 1114, 1116, 1121, 1125(a), and 1125(d); and under the All Writs Act, 28 U.S.C. § 1651(a).

    2.      This Court has original subject matter jurisdiction over ODB's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*.; 28 U.S.C. § 1338(a)–(b); and 28 U.S.C. § 1331.

    3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may

exercise personal jurisdiction over Defendants because Defendants structure their business activities to directly target consumers in the United States, including in Florida, through at least the fully interactive e-commerce stores operating under the aliases identified on "Schedule A" attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers; offer shipping to the United States, including to Florida; accept payment in U.S. dollars; and, on information and belief, have sold products using infringing and counterfeit versions of ODB's federally registered trademarks (collectively, the "Unauthorized Products") to residents of the United States, including residents of Florida. Each of the Defendants is committing tortious acts in the United States, including in Florida, and is engaging in interstate commerce and has wrongfully caused ODB substantial injury in the United States, including in Florida.

## II.      INTRODUCTION

4.      ODB filed this case to prevent e-commerce store operators who trade upon ODB's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing and counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate ODB's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to

2

conceal their identities, locations, and the full scope and interworking of their operation. ODB is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect consumers from purchasing Unauthorized Products over the Internet. ODB has been, and continues to be, irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III.    THE PARTIES

1.      The Estate of Russell Jones—the legal entity responsible for managing the legacy of Russell T. Jones ("Mr. Jones") and related intellectual property—was organized in the State of New York. Mr. Jones' widow, Icelene Jones, a U.S. citizen residing at 930 New Hope Road, #11-504, Lawrenceville, Georgia 30045—is an owner of the Estate of Russell Jones, as well as the estate's administrator. Accordingly, she exercises control over all business decisions. Taniqua Jones, Bar-sun Jones, Shaquita Jones, and Allah McCall are also owners of the estate. ODB owns the trademarks asserted in this action.

2.      Mr. Jones, born Russell Tyrone Jones and known professionally as Ol' Dirty Bastard, was a founding member of Wu-Tang Clan and one of the hip-hop's most influential figures. His legacy spans music, culture, and merchandising, both during his life and posthumously through the management of ODB. Mr. Jones rose to prominence in the early 1990s as a founding member of the Wu-Tang Clan, whose debut album, *Enter the Wu-Tang (36 Chambers)* (1993), revolutionized the hip-hop music genre with its gritty sound and martial arts-inspired themes.

3.      Mr. Jones' solo career produced hits such as "Shimmy Shimmy Ya" and "Brooklyn Zoo," and his collaborations included "Fantasy (Remix)" with Mariah Carey, "Ghetto Supastar" with Pras and Mýa, and "Got Your Money" featuring Kelis. Known for his raw vocal style and

unpredictable delivery, Mr. Jones helped define the Wu-Tang sound and left a lasting impact on the genre.

4.      Mr. Jones' debut solo album, *Return to the 36 Chambers: The Dirty Version*, was nominated for a Grammy Award for Best Rap Album. His collaboration on "Ghetto Supastar (That Is What You Are)" earned a Grammy nomination for Best Rap Performance by a Duo or Group and achieved international success.

5.      ODB is a legacy-focused entertainment entity that manages the intellectual property, licensing, and merchandising associated with Mr. Jones. It has partnered with major brands to release apparel, collectibles, and media projects celebrating Mr. Jones' cultural influence.

6.      ODB's authorized licensees market and sell a variety of products emanating from Mr. Jones' brand ("ODB brand"), including a variety of consumer products bearing the names, designs, signature, likeness, and associated branding of Mr. Jones. These products include, but are not limited to, apparel such as t-shirts, sweatshirts, hoodies, jackets, bottoms, underwear, socks, sneakers, and hats; toys and sporting goods such as action figures and skateboards; air fresheners; stickers; posters; art prints; decorative resin statues and collectable figures; the book *ODB: Oddities, Discord, & B-Sides – Lyrical Ruckus in the City*, a 112-page anthology available at various retailers including Barnes & Noble stores nationwide; and related accessories (collectively, "ODB Products").

7.      ODB Products have become enormously popular and even iconic, driven by ODB's quality standards and innovative designs. Among the purchasing public, ODB Products are instantly recognizable as such. The ODB brand has become a global success, and ODB Products are among the most recognizable in the world. ODB Products are distributed and sold through

ODB's authorized licensees directly to consumers as well as wholesale to retailers and other e-commerce websites, including but not limited to Amazon.

8.      ODB has used the ODB and OL' DIRTY BASTARD trademarks, and other trademarks, for many years and has continuously sold or licensed products for sale under its trademarks (collectively, the "ODB Trademarks"). As a result of this long-standing use, strong common law trademark rights have been amassed in the ODB Trademarks. ODB's use of the marks has also built substantial goodwill in the ODB Trademarks. The ODB Trademarks are famous marks and valuable assets of ODB. ODB Products typically include at least one of the ODB Trademarks.

9.      The ODB Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 6,217,078 | ODB | Dec. 8, 2020 | For: shirts; gloves; swimwear; socks; pants; belts for clothing; jackets; coats; dresses; footwear; hats, underwear; sweatshirt in Class 025. |
| 6,024,774 |  | Mar. 31, 2020 | For: Shirts; gloves; swimwear; socks; pants; belts for clothing; jackets; coats; dresses; footwear; hats, underwear; sweatshirts in Class 025. |
| 6,289,769 | ol' Dirty Bastard | Mar. 9, 2021 | For: shirts; socks; jackets; coats; footwear; hats, sweatshirts in Class 025. |

| | | | |
|---|---|---|---|
| 6,289,768 | OL' DIRTY BASTARD | Mar. 9, 2021 | For: shirts; socks; jackets; coats; footwear; hats; sweatshirts in Class 025. |
| 7,706,686 | *Ol' Dirty Bastard* | Feb. 25, 2025 | For: entertainment services, namely, live music concerts and live musical performances by a musical artist; entertainment services in the nature of live visual and audio performances, namely, musical shows in Class 041. |
| 7,495,782 | ODB | Sep. 3, 2024 | For: compact discs featuring music; audio tapes featuring music; phonograph records featuring music; musical recordings; musical video recordings; musical sound recordings; downloadable musical files; digital music downloadable from the internet; downloadable music via the internet and wireless devices; visual recordings and audiovisual recordings featuring music; sound recordings featuring music; audio recordings featuring music; video recordings featuring music; audio and visual recordings featuring music and musical performances; downloadable musical sound recordings in Class 009. |

| | | | |
|---|---|---|---|
| | | | For: entertainment services, namely, live music concerts and live musical performances by a musical artist; entertainment services in the nature of live visual and audio performances, namely, musical shows in Class 041. |
| 7,599,803 |  | Dec. 10, 2024 | For: compact discs featuring music; audio tapes featuring music; phonograph records featuring music; musical recordings; musical video recordings; musical sound recordings; downloadable musical files; digital music downloadable from the internet; downloadable music via the internet and wireless devices; visual recordings and audiovisual recordings featuring music; sound recordings featuring music; audio recordings featuring music; video recordings featuring music; audio and visual recordings featuring music and musical performances; downloadable musical sound recordings in Class 009.

For: entertainment services, namely, live music concerts and live |

| | | | |
|---|---|---|---|
| | | | musical performances by a musical artist; entertainment services in the nature of live visual and audio performances, namely, musical shows in Class 041. |
| 7,706,685 | OL' DIRTY BASTARD | Feb. 25, 2025 | For: entertainment services, namely, live music concerts and live musical performances by a musical artist; entertainment services in the nature of live visual and audio performances, namely, musical shows in Class 041. |
| 6,217,078 | ODB | Dec. 8, 2020 | For: shirts; gloves; swimwear; socks; pants; belts for clothing; jackets; coats; dresses; footwear; hats, underwear; sweatshirts in Class 025. |
| 6,024,774 |  | Mar. 31, 2020 | For: Shirts; gloves; swimwear; socks; pants; belts for clothing; jackets; coats; dresses; footwear; hats, underwear; sweatshirts in Class 025. |
| 6,289,768 | OL' DIRTY BASTARD | Mar. 9, 2021 | For: shirts; socks; jackets; coats; footwear; hats; sweatshirts in Class 025. |
| 7,495,782 | ODB | Sep. 3, 2024 | For: compact discs featuring music; audio tapes featuring music; phonograph records featuring music; musical |

| | | | |
|---|---|---|---|
| | | | recordings; musical video recordings; musical sound recordings; downloadable musical files; digital music downloadable from the internet; downloadable music via the internet and wireless devices; visual recordings and audiovisual recordings featuring music; sound recordings featuring music; audio recordings featuring music; video recordings featuring music; audio and visual recordings featuring music and musical performances; downloadable musical sound recordings in Class 009.<br><br>For: entertainment services, namely, live music concerts and live musical performances by a musical artist; entertainment services in the nature of live visual and audio performances, namely, musical shows in Class 041. |
| 7,599,803 |  | Dec. 10, 2024 | For: compact discs featuring music; audio tapes featuring music; phonograph records featuring music; musical recordings; musical video recordings; musical sound recordings; downloadable |

| | | | |
|---|---|---|---|
| | | | musical files; digital music downloadable from the internet; downloadable music via the internet and wireless devices; visual recordings and audiovisual recordings featuring music; sound recordings featuring music; audio recordings featuring music; video recordings featuring music; audio and visual recordings featuring music and musical performances; downloadable musical sound recordings in Class 009.<br><br>For: entertainment services, namely, live music concerts and live musical performances by a musical artist; entertainment services in the nature of live visual and audio performances, namely, musical shows in Class 041. |
| 7,706,685 | OL' DIRTY BASTARD | Feb. 25, 2025 | For: entertainment services, namely, live music concerts and live musical performances by a musical artist; entertainment services in the nature of live visual and audio performances, namely, musical shows in Class 041. |

10.     The United States registrations for the ODB Trademarks are valid, subsisting, and in full force and effect. The registrations for the ODB Trademarks constitute *prima facie* evidence of their validity and of ODB's exclusive right to use the ODB Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the U.S. Registration Certificates for the ODB Trademarks are attached hereto as **<u>Exhibit 1</u>**.

11.     The ODB Trademarks are exclusive to ODB and are displayed extensively on ODB Products and in marketing and promotional materials. The ODB Trademarks are also distinctive when applied to ODB Products, signifying to the purchaser that the products come from ODB and are manufactured to ODB's quality standards. Whether ODB manufactures the products itself or contracts with others to do so, ODB has ensured that its products bearing the ODB Trademarks are manufactured to the highest quality standards.

12.     The ODB Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs have enabled the ODB brand to achieve widespread recognition and fame and have been integral to making the ODB Trademarks some of the most well-known marks in the music industry and its related sectors, including the direct-to-fan merchandising sector. The widespread fame, outstanding reputation, and significant goodwill associated with the ODB brand have made the ODB Trademarks valuable assets of ODB.

13.     The ODB Trademarks have been the subject of substantial and continuous marketing and promotion by ODB's authorized licensees. ODB's authorized licensees have and continue to market and promote the ODB Trademarks in the industry and to consumers through both websites and physical retail storefronts.

14.     ODB's authorized licensees have expended substantial time, money, and other resources in advertising and promoting the ODB Trademarks. Specifically, they have expended substantial resources in advertising, promoting, and marketing featuring the ODB Trademarks. ODB Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the ODB Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from ODB. ODB Products have become among the most popular of their kind in the world. The ODB Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the ODB Trademarks is of immeasurable value to ODB.

15.     ODB Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the ODB brand.

16.     Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to ODB. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

17.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for ODB to learn Defendants' true identities and the exact interworking of their

network. If Defendants provide additional credible information regarding their identities, ODB will take appropriate steps to amend the Complaint.

## IV.    DEFENDANTS' UNLAWFUL CONDUCT

18.    The success of the ODB brand has resulted in significant counterfeiting of the ODB Trademarks. Because of this, ODB has implemented a brand protection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, ODB has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), DHGate.com ("DHGate"), eBay, Inc. ("eBay"), Roadget Business PTE Ltd. ("SHEIN"), ContextLogic Inc. ("Wish"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services because of increased sales from foreign online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates, attached as **Exhibit 2**.

19.    Because the counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id.* When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and

benefits. *Id.* Additionally, it is estimated that the importation of counterfeit goods cost the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

20.     Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020), attached as **Exhibit 3**; *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 4** at 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186–187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only for the counterfeiter to reappear under a new false name and address in short order." *Id.* at 161.

21.    Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer shipping to the United States, including Florida; accept payment in U.S. dollars; and, on information and belief, sell Unauthorized Products to residents of Florida.

22.    Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards, Amazon Pay, PayPal, and/or Stripe. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. ODB has not licensed or authorized Defendants to use any of the ODB Trademarks, and none of the Defendants are authorized retailers of ODB Products.

23.    Many Defendants also deceive unknowing consumers by using the ODB Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to ODB Products. Other e-commerce stores operating under the Seller Aliases omit using the ODB Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for ODB Products.

24.    E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

25.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

26.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

27.     E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by brand owners, such as ODB, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

28.     Counterfeiters, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite ODB's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to ODB.

29.     Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and/or sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from ODB, have knowingly and willfully used, and continue to use, the ODB Trademarks in connection with the advertisement, distribution, offering for sale, and/or sale of Unauthorized Products into the United States and Florida over the Internet.

30.     Defendants' unauthorized use of the ODB Trademarks in connection with the advertising, distribution, offering for sale, and/or sale of Unauthorized Products into the United States, including Florida, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming ODB.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

31.     ODB hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the ODB Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods. The ODB Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from ODB Products offered, sold, or marketed under the ODB Trademarks.

33.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products using counterfeit reproductions of the ODB Trademarks without ODB's permission.

34.     ODB owns the ODB Trademarks. ODB's United States registrations for the ODB Trademarks are in full force and effect. Upon information and belief, Defendants have knowledge of ODB's rights in the ODB Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the ODB Trademarks. Defendants' willful, intentional, and unauthorized use of the ODB Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

35.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36.     ODB has no adequate remedy at law, and if Defendants' actions are not enjoined, ODB will continue to suffer irreparable harm to its reputation and the goodwill of the ODB Trademarks.

37.     The injuries and damages sustained by ODB have been directly and proximately caused by Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38.     ODB hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39.     Defendants' promotion, marketing, offering for sale, and/or sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the

general public as to the affiliation, connection, or association with ODB or the origin, sponsorship, or approval of the Unauthorized Products by ODB.

40.     By using the ODB Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

41.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42.     ODB has no remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the ODB brand if certain Defendants' actions are not enjoined.

## PRAYER FOR RELIEF

WHEREFORE, ODB prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from – pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), the All Writs Act, and Federal Rule of Civil Procedure 65:

   a. using the ODB Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a ODB Product or is not authorized by ODB to be sold in connection with the ODB Trademarks;

b.  passing off, inducing, or enabling others to sell or pass off any products as ODB Products or any other product produced by ODB, that is not ODB's or not produced under the authorization, control, or supervision of ODBand approved by ODB for sale under the ODB Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of ODB, or are sponsored by, approved by, or otherwise connected with ODB;

d.  further infringing the ODB Trademarks and damaging ODB's goodwill; and

e.  manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for ODB, nor authorized by ODB to be sold or offered for sale, and which bear any of the ODB Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2)  Entry of an Order pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and the Court's inherent authority that, upon ODB's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms like Amazon, DHGate, eBay, SHEIN, Wish, and Walmart shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the ODB Trademarks;

3)  That Defendants account for and pay to ODB all profits realized by Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the ODB

Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4)  In the alternative, that ODB be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the ODB Trademarks;

5)  ODB is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 15 U.S.C. § 1117(a); and

6)  Award any and all other relief that this Court deems just and proper.

Dated this 15th day of October 2025.          Respectfully submitted,

/s/*George C. Sciarrino*

George C. Sciarrino
Florida Bar No. 1033844
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
george@tme-law.com

*Counsel for Plaintiff Estate of Russell Jones*

## Schedule A

This page is the subject of ODB's contemporaneously prepared Motion to File Certain Documents Under Seal, which ODB intends to promptly file upon the assignment of this civil case. Accordingly, this page has been redacted pursuant to L.R. 5.4(b)(1).